**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

UNITED STATES OF AMERICA        §
                                §
*versus*                        §        CASE NO. 9:10-CR-29(1)
                                §
JERONIMO LEON                   §

### MEMORANDUM AND ORDER

Pending before the court is Defendant Jeronimo Leon's ("Leon") *pro se* Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (#241) wherein he requests a reduction in his sentence of imprisonment. The Government filed a response in opposition (#243). Leon did not file a Reply. After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion is without merit.

I.    Background

On April 20, 2011, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned an eight-count Second Superseding Indictment against Leon and two co-defendants, charging him in Count One with Conspiracy to Distribute and Possess with Intent to Distribute more than 50 grams of Methamphetamine, in violation of 21 U.S.C. § 846; in Count Two with Possession with Intent to Distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and in Count Three with Possession of a Firearm during a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1). He was not charged in the other counts of the Indictment. On April 12, 2012, after withdrawing a prior plea agreement, Leon pleaded guilty to Count Two of the Second Superseding Indictment pursuant to a non-binding plea

agreement.  On April 12, 2012, United States District Judge Ron Clark sentenced Leon to 240 months' imprisonment, the mandatory minimum sentence, followed by a 10-year term of supervised release.

Leon did not appeal his conviction and sentence.  He filed two Motions to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, which were dismissed.  He also filed two prior Motions to Reduce Sentence based on Amendment 782 to the Sentencing Guidelines, which were denied or withdrawn, as well as two previous Motions to Reduce Sentence based on the First Step Act/Compassionate Release, which were also denied or withdrawn.  Leon is currently housed at Oakdale Federal Correctional Institution ("FCI Oakdale II"), located in Oakdale, Louisiana, with a projected release date of October 20, 2026.

In his motion, Leon, age 60, contends that he is entitled to a sentence reduction/compassionate release due to his medical circumstances, his unusually long sentence, and his rehabilitation.  As to his medical condition, Leon asserts:

> Here, Petitioner argues that he is suffering from medical conditions that require long term specialized medical care (and immediate care), that is not being properly provided, and without which he is at risk of serious deterioration in health; due to Petitioner's personal health risk factors (such as: Hyperlipidemia [high cholesterol levels]; history of bladder cancer; gastro-esophageal reflux disease; ventrial [sic] hernia; hypothyroidism; and obesity) and custodial status he is at increased risk of suffering severe medical complications of [sic] death as a result of exposure to the ongoing outbreak of infectious diseases.

II.    Reduction in Sentence

A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United*

2

*States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c).  Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality.  This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment.  The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission").  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances

that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are:

(1)  the medical circumstances of the defendant;

(2)  the age of the defendant;

(3)  the family circumstances of the defendant;

(4)  whether the defendant was a victim of abuse while in custody;

(5)  other reasons similar in gravity to those previously described; and

(6)  an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release or a sentence reduction on his own motion must satisfy the following hurdles:

(1)  the defendant must have exhausted his administrative remedies;

(2)  "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)  the reduction must be consistent with the Commission's applicable policy statements; and

(4)  the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release or sentence reduction unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate

release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release or a sentence reduction on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *McLean*, 2022 WL 44618, at *1.

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020)

(stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)). Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent. *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *see United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021). Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*, 2023 WL 307459, at *2.

Here, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the rule requiring exhaustion in the district court, "the court *must* enforce the rule."); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United*

*States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language: all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Here, Leon appears to have exhausted his administrative remedies only in part. He submitted to the court a copy of an Inmate Request to Staff addressed to Felipe Martinez, Jr. (Warden), dated August 14, 2024, in which he requested compassionate release/reduction in sentence pursuant to Policy Statement 5050.50 under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. He claims that "extraordinary and compelling reasons" which could not have been foreseen by the court at the time of sentencing exist in his case. He elaborates:

> Such as, Medical Reasons, diabetes, high cholesterol, and hypertension all which make Petitioner highly vulnerable to the ever-developing strains of the Covid-19 virus; Other Reasons, such as an Unusually Long Sentence, that would have been reduced by intervening changes in governing laws; and Rehabilitation of the Petitioner during his more than 13 and a half years of imprisonment, through education programming and/or impeccable work ethic.

There is no indication that, after the passage of 30 days, the warden of the facility had responded to the request. *See Garrett*, 15 F.4th at 338 ("[A] prisoner may wait 30 days after filing his

8

request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court."). Leon, however, makes no mention in his request to the warden of most of the medical conditions he now raises in his motion—history of bladder cancer, gastro-esophageal reflux disease, ventral hernia, hypothyroidism, and obesity. Thus, Leon is deemed to have exhausted his administrative remedies with respect to only some of his medical claims. Nevertheless, while Leon may have complied with the exhaustion requirement, at least in part, before filing his motion for sentence reduction, nothing in the motion indicates that extraordinary and compelling reasons exist to reduce his sentence or release him from confinement.

C.     Criteria for Compassionate Release or Sentence Reduction

With respect to a defendant's medical circumstances, §§ 1B1.13(b)(1)(A), (B), (C), and (D) of the United States Sentencing Guidelines state that extraordinary and compelling reasons exist if the defendant's motion presents the following circumstances:

(A)     The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

U.S.S.G. § 1B1.13(b)(1)(A).

(B)     The defendant is—

     (i)     suffering from a serious physical or medical condition,

     (ii)     suffering from a serious functional or cognitive impairment, or

     (iii)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(B).

    (C)    The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(C).

    (D)    The defendant presents the following circumstances—

        (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal state, or local authority;

        (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak or infectious disease or the ongoing public health emergency described in clause (i); and

        (iii)    such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

Here, Leon does not assert that he is suffering from a terminal illness or from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. Rather, he claims to be suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health. The only specific medical claim that he has exhausted is his hyperlipidemia [high cholesterol] claim, which his BOP medical records have consistently described for the last five years as "diet controlled."

Although he exhausted his claims for diabetes and hypertension, his medical records contain no mention of Leon ever being diagnosed as having diabetes or being prescribed any medication for diabetes.  Hypertension also is not listed as a medical condition from which Leon suffers.  Hospital records from Oakdale Community Hospital, where Leon was admitted for abdominal pain in March 2025, reveal that at the time of his admission, his blood pressure reading was essentially normal at 113/81.[2]  He experienced hypertensive urgency, however, while being treated for colitis at the facility, but his blood pressure was lowered when administered doses of amlodipine and hydralazine during his hospitalization, and he was released on March 25, 2025, in good condition.  Moreover, his BOP medical records reflect that "Hypertension, Benign Essential," was crossed out as a current medical condition in 2015.  He received handouts on hypertension, however, in April and July 2024.  When Leon was seen for a routine blood pressure check on June 7, 2024, to assess for the HTN [hypertension] clinic, the assessment revealed no significant findings and his blood pressure reading was 128/74.  The records reflect that he was asymptomatic and denied experiencing any symptoms at that time.  Leon was a "No Show" for repeated blood pressure tests in April and July 2025.

Leon accurately states that he has a history of bladder cancer.  According to his BOP medical records, he underwent a radical cystectomy with orthotopic neobladder in 1999 in which his bladder and prostate were removed and surgeons created an artificial bladder using a portion of his intestine.  When interviewed in connection with the preparation of his Presentence

---

[2] According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

Investigation Report ("PSR") in 2011, Leon reported that he underwent bladder surgery in Mexico in 1983 and that the previously described cystectomy occurred in December 2000 at Parkland Hospital in Dallas, Texas. No medical records were provided regarding these prior surgeries. He was treated by a urologist in Nacogdoches, Texas, prior to his detention, but correspondence provided by the doctor showed that he had not seen Leon since sometime before 2004. His BOP medical records reflect that Leon had questionable urine cytology in March 2021 and atypical urine cytology in December 2022. Leon was seen by a urologist for a history of atypical urine cytology in November 2023, but he refused follow-up appointments. Leon also refused general surgery consults in August 2023 and September 2024 regarding his bladder, a colonoscopy in April 2019, and fecal occult blood tests ("FOBT") from 2017-2019. He had a positive FOBT in August 2024, but he refused a general surgeon consult in September 2024. As of July 7, 2025, Leon had no pending consults. Probation reports that Leon refused medical treatment on at least 17 occasions in 2023. On November 23, 2023, after he was seen at a medical facility and medical personnel recommended a CT scan of his abdomen and pelvis, a urine test for cytology, and a urology follow-up, he refused, stating, "I've had this for 24 years, I'm good." On September 17, 2024, when advised of the recommendation for a general surgeon consult for a colonoscopy, Leon stated, "I don't want that. Never had it before, don't want it." Additionally, he signed a refusal for a colonoscopy.

As to Leon's claim that he suffers from gastro-esophageal reflux disease ("GERD"), his BOP medical records reflect that as of July 7, 2025, this condition has been in remission since 2016. The records further reveal that his prior gastroenteritis and colitis were resolved in March 2025. With regard to his complaints of a ventral hernia, Leon's medical records indicate that he

underwent hernia repair in October 2019. The PSR reflects that Leon also had ventral hernia repair in Nacogdoches in 2002 as well as in 2008. He is assigned a lower bunk due to his hernia and abdominal surgeries and has physical limitations/restrictions prohibiting his participation in all sports as a result. On July 7, 2025, he was advised that if he participated in any sports, the bottom bunk restriction would be removed and not replaced. Leon has been diagnosed with hypothyroidism since 2021 for which he has been prescribed varying doses of levothyroxine. Test results reflect that his hypothyroidism is currently well controlled with this medication. Leon is also obese, with a Body Mass Index of 39.[3] Lifestyle changes have been recommended.

Leon is classified as Medical Care Level 2 inmate, which denotes stable, chronic care. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." As of July 7, 2025, Leon had no work restrictions and was cleared for food service. His current work assignment is in food service.

Courts of appeal from across the country have rejected motions for compassionate release based on an inmate's medical condition who, like Leon, have refused or failed to comply with prescribed treatment and testing regimens. *See United States v. Oliver*, No. 21-50170, No. 21-50171, 2022 WL 4285598, at *1 (9th Cir. Sept. 16, 2022) (holding that the prisoner's "failure to adhere to his prescribed treatments undermines his assertion that the BOP's inadequate medical

---

[3] According to the CDC, a body mass index ("BMI") below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

care is an extraordinary and compelling reason for release"); *United States v. Colmenares Fierro*, No. 21-40566, 2022 WL 2357078, at *1 (5th Cir. June 30, 2022) (recognizing that an inmate's declining treatment for latent tuberculosis precluded him from relying on this condition as a basis for compassionate release); *United States v. Broomfield*, No. 20-14514, 2022 WL 896825, at *1 (11th Cir. Mar. 28, 2022) (rejecting motion for compassionate release filed by prisoner who refused to take medications to control his blood pressure or to comply with his doctor's advice to watch his diet and to exercise); *United States v. Glasper*, 854 F. App'x 748, 749-50 (7th Cir. 2021) (denying compassionate release because inmate had refused treatment for diabetes in prison, his asthma was well controlled, and his hypertension was not severe which undercut his assertion that his medical conditions presented an extraordinary and compelling reason for release).

District courts have likewise rejected motions for compassionate release filed by inmates who failed to adhere to medical testing and treatment plans. *See United States v. Waldron*, No. 1:15-cr-41-TC, 2023 WL 258456, at *2 (D. Utah Jan. 18, 2023) (rejecting compassionate release motion filed by prisoner who claimed to have high blood pressure but refused to submit to blood pressure checks); *United States v. Salas*, No. 1:18CR247, 2022 WL 16695265, at *2 (N.D. Ohio Nov. 3, 2022) (denying relief to inmate who did not regularly check his blood sugar as required to manage his chronic conditions, commenting that when a defendant is at fault for the worsening of his medical conditions he cannot rely on those medical conditions as extraordinary and compelling reasons for compassionate release); *United States v. Patton*, No. 16-40113-01-DDC, 2022 WL 2134197, at *5 (D. Kan. June 14, 2022) (declining to grant relief to prisoner who complained of gastroenterological issues and alleged lack of treatment where he refused an outside medical trip for those issues, remarking that "[i]f Mr. Patton's gastroenterological issue isn't

extraordinary enough to warrant a trip for diagnosis, it certainly isn't extraordinary enough to warrant compassionate release from a prison sentence following serious felon[y] offenses"); *United States v. Rodriguez-Sanchez*, No. 8:18-cr-299-VMC-AAS, 2021 WL 3912242, at *2 (M.D. Fla. Sept. 1, 2021) (denying compassionate release to prisoner who was a "no show" for multiple medical appointments for latent tuberculosis); *United States v. Bethel*, No. 3:08-CR-118, 2020 WL 7321372, at *3 (E.D. Tenn. Dec. 11, 2020) (rejecting motion filed by inmate who had failed to complete and refused treatment for latent tuberculosis, stating "this Court will not find grounds for compassionate release created solely by a defendant's refusal to comply with recommended medical care"). As the court reasoned in *United States v. Gonzalez Zambrano* regarding a prisoner who refused to be inoculated with the COVID-19 vaccine:

> Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them.

No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021).

Further, Leon provides no evidence that he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death. Almost all of his afflictions are resolved or are well controlled with medication or diet. As to the conditions that remain, Leon has consistently refused medical consultations, tests, and treatment. As a result, Leon cannot establish that he is being deprived of long-term or specialized medical care that jeopardizes his health. Moreover, none of Leon's medical conditions appear to affect his ability to provide self-care in the institutional setting. Leon's inmate profile, contained in the BOP records, reveals that he is

housed in general population, is ambulatory, has no medical restrictions, is eligible for regular duty work assignments, and is cleared for food service. Under the circumstances, Leon's medical conditions present no "extraordinary and compelling" reasons warranting a sentence reduction or compassionate release.

Section 1B1.13(b)(1)(D) addresses "an 'ongoing outbreak of infectious disease' at a 'correctional facility'" that, due to a defendant's "personal health risk factors and custodial status," "place[s] the defendant at 'increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak.'" *United States v. Stehley*, No. 3:16-CR-14, 2023 WL 8014078, at *7 (W.D. Pa. Nov. 9, 2023) (quoting U.S.S.G. § 1B1.13(b)(1)(D)(i), (ii)). Here, Leon has failed to show that Oakdale II is actually affected with an ongoing outbreak of infectious disease or an ongoing public health emergency declared by the appropriate federal, state, or local authority. U.S.S.G. § 1B1.13(b)(1)(D)(i). Leon's medical records indicate that he contracted COVID-19 in January 2021 and again in January 2022, but he fully recovered from the illness on both occasions within a few weeks. He received COVID-19 vaccinations in March and April 2021 and refused booster vaccinations in February and October 2022. Since that time, the medical records show no instances of Leon's contracting an infectious or communicable disease while incarcerated at Oakdale II. Leon's medical conditions thus do not appear to put him at an increased risk of suffering severe medical complications or death as a result of any ongoing outbreak of infectious disease or ongoing public health emergency declared by the appropriate federal, state, or local authority at Oakdale II. Finally, Leon has failed to demonstrate that any risk cannot be adequately mitigated in a timely manner. As the Fifth Circuit has previously held, "it is the actuality, not the risk, of terminal illness that makes a prisoner's circumstances

extraordinary." *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam).  Hence, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *Id*. (citing *United States v. Thompson*, 984 F.3d 431, 432-34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned about COVID-19); *United States v. Rodriguez*, 27 F.4th 1097, 1098-1100 (5th Cir. 2022) (denying relief where COVID-19 fearing movant suffered from heart failure)).

Importantly, "generalized concerns about COVID-19 cannot be deemed an 'extraordinary and compelling reason' for compassionate release under [§] 1B1.13." *Stehley*, 2023 WL 8014078, at *7; *see United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release." (citing *Thompson*, 984 F.3d at 435); *Davis v. United States*, No. 3:22-CV-01410-L (BT), 2023 WL 9597200, at *4 (N.D. Tex. Nov. 15, 2023), *adopted by* No. 3:22-CV-01410-L-BT, 2024 WL 302487 (N.D. Tex. Jan. 25, 2024), *aff'd*, 124 F.4th 980 (5th Cir. 2025).  Rather, § 1B1.13(b)(1)(D) is concerned with "an 'ongoing outbreak of infectious disease' at a 'correctional facility'" that, due to a defendant's "personal health risk factors and custodial status," "place[s] the defendant at 'increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak.'" *Stehley*, 2023 WL 8014078, at *7 (quoting U.S.S.G. § 1B1.13(b)(1)(D)(i), (ii)).  "[T]he increased risk from an outbreak or emergency must exist at the time relief would be granted." *United States v. Garza*, No. 4:02-CR-100(15), 2025 WL 964029, at *4 (E.D. Tex. Mar. 31, 2025).  "As applied to COVID-19, this is no longer the case:  both international and domestic health authorities, including the World Health Organization, the United States Centers for Disease

17

Control and Prevention, and the U.S. Federal Government, have made clear that the COVID-19 pandemic had ended." *Id.*; *accord United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination."). Thus, "the COVID-19 pandemic no longer constitutes an 'extraordinary and compelling reason' for compassionate release." *Garza*, 2025 WL 964029, at *4; *United States v. Aaron*, No. 4:18-CR-46-SDJ, 2025 WL 696965, at *5 (E.D. Tex. Mar. 4, 2025). "Indeed, since the pandemic has ended, it is difficult to see how the COVID-19 pandemic could now be the basis for compassionate release." *Garza*, 2025 WL 964029, at *8; *see United States v. Gonzalez*, No. 4:19-CD-160-SDJ, 2025 WL 254112, at *4 (E.D. Tex. Jan. 21, 2025). Moreover, even if the COVID-19 pandemic still constituted an "ongoing public health emergency," Leon cannot satisfy each of § 1B1.13(b)(1)(D)'s three prongs for his particular circumstances to be considered "extraordinary and compelling." *See* U.S.S.G. § 1B1.13(b)(1)(D)(i)-(iii).

Hence, Leon is not entitled to a reduction in sentence/compassionate release based on the factors set forth in Section 1B1.13(b)(1)(D). He makes no showing of an ongoing outbreak of infectious disease or an ongoing public health emergency at a correctional facility that, due to his personal health risk factors and custodial status, places Leon at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak.

### 2.    Unusually Long Sentence/Changes in the Law

Leon further contends that he should be granted a sentence reduction and released from custody because he received an unusually long sentence. He maintains that if he were sentenced

today, he would receive a lesser sentence under current law, creating unwarranted sentencing disparities.

With regard to Leon's invocation of the Unusually Long Sentence ground for a sentence reduction, Section 1B1.13(b)(6) provides:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).   A limitation on considering changes in the law is contained in 1B1.13(c) of the Sentencing Guidelines, which provides:

> LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement.   However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

In order to meet the requirements of the Unusually Long Sentence provision of U.S.S.G. § 1B1.13(b)(6), Leon must satisfy three requirements.   First, the defendant must be serving an unusually long sentence.   U.S.S.G. § 1B1.13(b)(6).   The sentence Leon received, 240 months, could be viewed as unusually long.   Second, the defendant must have served at least ten years of that sentence.   *Id*.   Leon has fulfilled this requirement.   Third, there must have been a change in the law that "produce[s] a gross disparity between the sentence being served and the sentence

likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes the consideration of non-retroactive changes "to the Guidelines Manual." *Id.* In the Fifth Circuit, controlling precedent precludes the court's consideration of non-retroactive changes in *any* law, which accounts for much of the alleged disparity in this case. *See Austin*, 125 F.4th at 692 ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."); *Escajeda*, 58 F.4th at 187 (holding that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence").

In a 2023 decision, the Fifth Circuit rejected a defendant's argument that he should receive a sentence reduction because the First Step Act reduced the statutory minimums applicable to his offenses. *See McMaryion*, 2023 WL 4118015, at *2. The court pointed out that Congress did not make those reductions retroactive and went on to declare that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *Id.* The court noted that "in federal sentencing the *ordinary* practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Id.* (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). The court elaborated that this ordinary practice reflects a "presumption against retroactive legislation" that is "deeply rooted in our jurisprudence" and that "embodies a legal doctrine centuries older than our Republic." *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). The *McMaryion* court held: "We may not usurp the legislative prerogative and use 18 U.S.C. § 3582(c)(1) to create retroactivity that Congress did not." *Id.*

20

On July 15, 2024, however, the Fifth Circuit took the opposite approach in *United States v. Jean* when it upheld the release of a defendant for whom the district court found compassionate release to be warranted because his sentence, if imposed at the time of review, would have been nearly a decade shorter and he had exhibited extraordinary rehabilitation. 108 F.4th at 277. The defendant's sentence would have been shorter because he no longer would have been classified as a career offender under U.S.S.G. § 4B1.1, which, among other things, would have affected his criminal history category. *Id.* at 279-80. Pointing to the Commission's amendments to the Guidelines that became effective on November 1, 2023, specifically U.S.S.G. § 1B1.13(b)(6), the court held that "after November 1, 2023, a non-retroactive change in the law may be considered in determining whether the defendant presents, as a whole, extraordinary and compelling reasons if: (1) the defendant has served at least ten years of the term of imprisonment; (2) the change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (3) the defendant's individualized circumstances support compassionate release." *Id.* at 289-90. The *Jean* court explicitly held:

> It is within a district court's sound discretion to hold that non-retroactive changes in the law, in conjunction with other factors such as extraordinary rehabilitation, sufficiently support a motion for compassionate release. To be clear, it is also within a district court's sound discretion to hold, after fulsome review, that the same *do not* warrant compassionate release. For this court to hold otherwise would be to limit the discretion of the district courts, contrary to Supreme Court precedent and Congressional intent.

*Id.* at 290.

In *Austin*, a different panel of the Fifth Circuit reached a contrary conclusion. In January 2023, the defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1), arguing that a non-retroactive change in the law was an extraordinary and compelling reason to

reduce his sentence. 125 F.4th at 690-91. At the time Austin pleaded guilty to conspiracy to distribute cocaine hydrochloride and cocaine base in violation of 21 U.S.C. § 846, and at the time of his sentencing in 2013, the mandatory minimum sentence for that offense was 20 years of imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (2010). The district court applied the mandatory minimum and sentenced Austin to 20 years of imprisonment. In 2018, Congress reduced the mandatory minimum sentence for that offense to 15 years of imprisonment. *See* First Step Act of 2018, Pub. L. No. 115-391, § 401(a)(2)(A), 132 Stat. 5194, 5220 (codified as amended at 21 U.S.C. § 841(b)(1)(A)). Congress, however, explicitly made this change non-retroactive. *See id*. § 401(c), 132 Stat. at 5221. Austin argued in his motion for compassionate release that despite Congress's decision to make § 401 non-retroactive, it should nonetheless apply retroactively to him. *Austin*, 125 F.4th at 691. He contended that the non-retroactive change set forth in § 401 was a "compelling and extraordinary" reason to reduce his sentence, because "if he were sentenced today, he would get the benefit of the First Step Act." *Id*.

The Fifth Circuit rejected Austin's argument, holding that it was "squarely foreclosed under our rule of orderliness: (A) we are bound by *United States v. Escajeda*, and (B) our later decision in *United States v. Jean* was wrong to say otherwise." *Id*. The court observed that Austin's case was "controlled by the binding holding in *United States v. Escajeda*." *Id*. Citing the definitions of "extraordinary" and "compelling" set forth in *Escajeda*, the *Austin* court concluded that prisoners have extraordinary and compelling reasons for relief "only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id*. (quoting *Escajeda*, 58 F.4th at 186). The court reasoned:

> A non-retroactive change in the law affects every prisoner previously sentenced under that provision in the exact same way. And by its terms, a non-retroactive

22

> change in the law has zero effect on defendants already in prison.  Thus, a non-retroactive change in law is, by definition, neither an "extraordinarily severe exigency" nor "unique to the life of the prisoner."  *Ibid.*  Under a straightforward reading of *Escajeda*, a non-retroactive change in the law is not an extraordinary or compelling reason to reduce a prisoner's sentence.

*Id.* at 692.  The panel noted that the Fifth Circuit had repeatedly followed *Escajeda* and reaffirmed this result.  *See United States v. Cardenas*, No. 19-40425, 2024 WL 615542, at *2 (5th Cir. Feb. 14, 2024) (per curiam); *United States v. Elam*, No. 22-40373, 2023 WL 6518115, at *1-2 (5th Cir. Oct. 5, 2023) (per curiam); *McMaryion*, 2023 WL 4118015, at *2.

The *Austin* court recognized that § 1B1.13(b)(6) of the Guidelines, the provision at issue here, says that a non-retroactive change in the law may be considered in determining whether the defendant presents an extraordinary and compelling reason for a sentence reduction.  125 F.4th at 692.  The court, however, stated:

> But that changes nothing.  Just like any agency action, the Guidelines "must bow to the specific directives of Congress."  *United States v. LaBonte*, 520 U.S. 751, 757  . . . (1997); *accord Stinson v. United States*, 508 U.S. 36, 38, 44-45 . . . (1993).  Thus, the Sentencing Commission cannot make retroactive what Congress made non-retroactive.  *See, e.g., McMaryion*, 2023 WL 4118015, at *2.  And it certainly cannot do so through an interpretation of "extraordinary and compelling" that conflicts with the plain meaning of those terms.  *See ibid.*  Moreover, the Commission "does not have the authority to amend the statute we construed" in *Escajeda* and its progeny.  *Neal v. United States*, 516 U.S. 284, 290 . . . (1996); *accord United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017).

*Id.*; *accord* 28 U.S.C. § 994(a) (mandating that the Commission's guidelines be "consistent with all pertinent provisions of any Federal statute").  The *Austin* panel proceeded to declare that *Jean* "was wrongly decided and does not control.  Under our rule of orderliness, when one panel decision disregards an earlier panel decision, we are duty-bound to follow the earlier one."  125 F.4th at 692-93 (citing *Lucas v. Lumpkin*, 125 F.4th 639, 641 (5th Cir. 2025); *Nivelo Cardenas v. Garland*, 70 F.4th 232, 242 n.7 (5th Cir. 2023)).  Thus, the *Austin* decision makes clear that

"[a] non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582." *Id.*

In the case at bar, Leon contends that if he were sentenced today, he would not be subject to § 851 enhancements for repeat offenders. On December 21, 2018, President Trump signed the First Step Act into law. Section 401 of the Act, in part, reduces and restricts enhanced mandatory minimum sentences based on prior drug convictions, which are commonly referred to as "851 enhancements." Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21 (codified as amended at 21 U.S.C. §§ 802, 841, 960); *see United States v. Declouet*, No. CR 07-198, 2020 WL 708137, at *2 (E.D. La. Feb. 12, 2020). The term "851 enhancement" derives from 21 U.S.C. § 851, which establishes the procedures necessary for the Government to prove a prior drug conviction for purposes of sentence enhancement. *See United States v. Banks*, 770 F.3d 346, 350 (5th Cir. 2014). The procedures set forth in § 851 were not modified by the First Step Act. Section 851(a) requires the Government, before trial or the entry of a guilty plea, to file a notice in writing with the court of any previous convictions to be relied upon with the court and to serve a copy on the defendant. 21 U.S.C. § 851(a)(1).

Section 401 reduces the minimum sentences which must be imposed when § 851 enhancements apply under 21 U.S.C. §§ 841(b)(1)(A) and 960(b)(1). Section 401 states in pertinent part:

> (A)(2)(i) by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years" and inserting the following: "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"; and

24

(ii) by striking "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release" and inserting the following: "after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years"; and

\* \* \*

(c) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21.

Section 401 not only reduced the mandatory minimum penalties, but also changed the conditions under which they apply under 21 U.S.C. §§ 841(b)(1)(A), (B), and 960(b)(1), (2).[5] Prior to the First Step Act, enhanced mandatory minimum sentences were triggered upon the showing of a prior conviction for a "felony drug offense." Now, the defendant's prior conviction must meet the new definition of a "serious drug felony" or "serious violent felony."[6] *See* Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21. Here, Leon's prior conviction for delivery of

---

[5] Sections 841(b)(1)(C) and (D) were not amended.

[6] "Serious drug felony" and "Serious violent felony" are defined in 21 U.S.C. § 802(57) and (58), respectively. A "serious drug felony" means an offense prohibited by 18 U.S.C. § 924(e)(2)(A) for which the defendant served a term of imprisonment of more than 12 months and was released from any term of imprisonment within 15 years of the instant offense. Section 924(e)(2)(A) defines "serious drug offense" as an offense under the Controlled Substances Act (21 U.S.C. § 801 *et seq*.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq*.), Chapter 705 of Title 46 (Maritime Drug Law Enforcement) or under state law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment is 10 years or more. "Serious violent felony" means an offense for which the defendant served a term of imprisonment of more than 12 months that is either a violation of 18 U.S.C. § 3559(c)(2) or 18 U.S.C. § 113 (assaults within maritime or territorial jurisdiction). Section 3559(c)(2)(F) defines "serious violent felony" as enumerated offenses including murder, certain sex offenses, kidnapping, extortion, arson, and certain firearms offenses, among others, or as any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense" and is punishable by a maximum term of imprisonment of 10 years or more.

25

marijuana would not be deemed a serious drug felony because he did not serve a term of imprisonment of more than 12 months. Instead, he was sentenced to 2 years' imprisonment suspended to 3 years' probation and a $1,000 fine. Hence, Leon would no longer be subject to the mandatory minimum penalties prescribed in § 851.

If sentenced today under the current Sentencing Guidelines, based on his responsibility for 137.5 grams of methamphetamine (actual), Leon would be assigned a base offense level of 30 for possession of at least 50 grams but less than 150 grams of methamphetamine (actual). He would likely receive a two-level increase for his possession of firearms in connection with offense, and he would be ineligible for the safety valve due to the presence of the firearms. Leon would also be entitled to a three-level reduction for acceptance of responsibility. As a result, his total offense level would likely be 29 with a criminal history category of I, yielding a guideline sentence range of 87-108 months' imprisonment. This calculation is in large part conjectural, however, because the prosecutor's charging decisions and the lawyers' plea bargaining considerations today could potentially be different.

Nonetheless, to the extent Leon seeks a reduction under Section 401 of the First Step Act, he is foreclosed from obtaining relief. Section 401 of the First Step Act does not apply retroactively. *See United States v. Short*, No. 22-30812, 2023 WL 3391476, at *1 (5th Cir. May 11, 2023) (holding that § 401 of the First Step Act does not apply retroactively) (citing *United States v. McClaren*, 13 F.4th 386, 417 (5th Cir. 2021)); *United States v. Norwood*, No. 22-6104, 2023 WL 1872577, at *2 (10th Cir. Feb. 10, 2023) (finding the First Step Act did not provide retroactive relief to the defendant who had received a life sentence pursuant to a § 851 enhancement); *United States v. Staggers*, 961 F.3d 745, 753 (5th Cir. 2020) (holding that § 401

of the First Step Act does not apply retroactively); *United States v. Carabali-Diaz,* 800 F. App'x 299, 299 (5th Cir. 2020) (holding that "Sections 401 and 403 of the First Step Act do not apply to [Defendant] because he was sentenced before the statute's enactment on December 21, 2018."); *accord United States v. Strother*, 854 F. App'x 627, 628 (5th Cir. 2021); *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021) ("The First Step Act explicitly says that the amendment to which [the defendant] refers—§ 401—applies 'only where a sentence for the offense has not been imposed as of [December 21, 2018].'" (quoting *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019))); *United States v. Pubien*, 805 F. App'x 727, 730 (11th Cir. 2020) ("The First Step Act did not make § 401's amendments retroactively applicable to defendants sentenced prior to its enactment."); *United States v. Lyle*, 506 F. Supp. 3d 496, 497-98 (S.D. Tex. 2020), *aff'd*, No. 21-20005, 2022 WL 126988, at *1 (5th Cir. 2022). In the case at bar, Leon was sentenced on April 12, 2012, to 240 months' imprisonment, followed by a 10-year term of supervised release, which was prior to the enactment of the First Step Act on December 21, 2018. Therefore, Leon is ineligible to receive a sentence reduction under the terms of Section 401 of the First Step Act.

In this case, the application of U.S.S.G. § 1B1.13(b)(6) conflicts with controlling court precedent that rejects the use of non-retroactive changes to the law to justify a reduction in sentence under 18 U.S.C. § 3582(c)(1). Therefore, the Commission has exceeded the scope of its explicitly delegated authority and § 1B1.13(b)(6) is invalid in this context. *See* 28 U.S.C. § 994(a); *Austin*, 125 F.4th at 692-93. The Courts of Appeals for the Third, Sixth, and Seventh Circuits have similarly held that when Congress makes a change in the law non-retroactive, such change cannot serve as an extraordinary and compelling reason warranting compassionate release or a sentence reduction. *See United States v. Bricker*, 135 F.4th 427, 444, 449-50 (6th Cir. 2025)

(noting that § 1B1.13(b)(6)'s construction of "extraordinary and compelling" conflicts with other statutes (either the non-retroactive statutory amendments or 1 U.S.C. § 109) and holding the Commission cannot interpret a statute in a way that contradicts or negates other statutes (citing 28 U.S.C. § 994(a)), which "violates the separation of powers" and is invalid); *United States v. Black*, 131 F.4th 542, 546 (7th Cir. 2025) (holding that the Commission's interpretation of extraordinary and compelling must be "consistent with all pertinent provisions of any Federal statute" and to the extent § 1B1.13(b)(6) conflicts with another statute, the guideline is invalid (quoting 28 U.S.C. § 994(a)); *United States v. Rutherford*, 120 F.4th 360, 375-76 (3d Cir. 2024) (pointing out that "Congress has granted the Commission power to promulgate only those policy statements that are 'consistent with all pertinent provisions of any Federal statute'" (quoting 28 U.S.C. § 994(a)), and holding that § 1B1.13(b)(6) "conflicts with the will of Congress and thus cannot be considered in determining a prisoner's eligibility for compassionate release"), *cert. granted*, No. 24-820, 2025 WL 1603603 (June 6, 2025).

Other district courts within the Fifth Circuit have also recognized that non-retroactive changes in sentencing law cannot be used to reduce a defendant's sentence merely because, in the judge's estimation, the defendant received an unusually long sentence that now represents a gross disparity from the sentence the court would likely impose today.  *See United States v. Torres*, No. H-93-210-1, 2025 WL 1654590, at *2, 5 (S.D. Tex. June 11, 2025) (declining to reduce life sentence imposed on defendant for engaging in a drug trafficking and money-laundering conspiracy based on non-retroactive changes to the law); *see also United States v. Santivanez*, No. SA-98-CR-304(2)-OLG, 2025 WL 1703429, at *4 (W.D. Tex. Apr. 29, 2025), *adopted by* 2025 WL 1700054 (W.D. Tex. June 17, 2025) (rejecting sentence reduction motion filed by a then

21-year-old participant in a conspiracy to firebomb the home of a rival gang member that resulted in the death of one of the occupants who was sentenced to life imprisonment plus an additional 30-year mandatory consecutive sentence); *United States v. Matute-Carcamo,* No. H-19-494-2, 2025 WL 1677950, at *3 (S.D. Tex. June 13, 2025) (recognizing that a "non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)"); *United States v. Guillory*, No. 2:02-CR-20062-01, 2025 WL 910518, at *3 (W.D. La. Mar. 24, 2025) ("Compassionate release claims arising from non-retroactive changes in the law are not cognizable under 18 U.S.C. § 3582(c)(1)(A) despite the addition of subsection (b)(6) to the Sentencing Commission's policy statement."); *United States v. Warren*, No. 2:21-cr-33-KS-MTP, 2025 WL 465320, at *4 (S.D. Miss. Feb. 11, 2025).

Therefore, under controlling Fifth Circuit law, the length of Leon's sentence imposed in 2012 versus the length of the sentence he might receive today cannot be considered in determining whether a sentence reduction or compassionate release is warranted under 18 U.S.C. § 3582(c)(1)(A).

### 3.    Rehabilitation

Leon also asserts that his rehabilitation while in custody and his remorse for his crimes support his motion for compassionate release. He maintains that he has made great progress toward rehabilitation throughout his 14 years in prison. He claims to have not once committed an infraction and that he has no history of violence. He states that he has completed several educational courses, including drug education, literacy, and parenting skills. Leon also points out that his age, 60, supports the conclusion that he is statistically less likely to recidivate upon release and that he has a minimum risk recidivism level. The court notes from his prison records that

29

Leon is not eligible for placement in a residential re-entry center or home confinement because he is considered a criminal alien who will be releasing to the custody of Immigration and Customs Enforcement.  Although Leon is eligible for a treaty transfer, he is not interested.

Regarding rehabilitation of the defendant, the Guidelines recognize:  "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.  However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").

Hence, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *accord United States v. Rios*, No. 24-673-cr, 2025 WL 841862, at *2 (2d Cir. Mar. 18, 2025); *United States v. Black*, 131 F.4th 542, 544 (7th Cir. 2025); *see United States v. Cordoba*, No. 24010599, 2025 WL 799354, at *1 (5th Cir. Mar. 13, 2025); *Shkambi*, 993 F.3d at 392; *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone.").  In fact, "[m]aking good use of one's time in prison

is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)); *see United States v. Alimehmeti*, No. 16-CR-398 (PAE), 2024 WL 4880197, at *8 (S.D.N.Y. Nov. 25, 2024) (recognizing that some amount of rehabilitative effort is expected of inmates and holding that completion of educational courses and doing productive work while incarcerated did not justify early release). Further, "making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020). In any event, in *United States v. Comb*, the court found a BOP log listing a defendant's participation in rehabilitative programs similar to that referenced by Leon to be "wholly inadequate" for concluding that the defendant's rehabilitation was "beyond or out of the common order." No. H-13-0575-06, 2025 WL 240954, at *3 (S.D. Tex. Jan. 17, 2025) (quoting *Escajeda*, 58 F.4th at 186), *aff'd*, 2025 WL 603881 (5th Cir. Feb. 25, 2025).

Although Leon has generally maintained a good disciplinary record while incarcerated,[7] other courts have found a similar argument not to be extraordinary and compelling. *See United States v. Campos*, No. 22-5216, 2022 WL 4298703, at *2 (6th Cir. Aug. 25, 2022) (affirming the denial of compassionate release where the district court found the defendant's disciplinary record with no infractions and rehabilitation "insufficient" in light of his "serious offense," "significant criminal history," and the fact that he "had a substantial amount of his sentence remaining");

---

[7] In December 2017, he was sanctioned for possessing an unauthorized item and lost commissary privileges for 14 days.

*United States v. Parker*, No. 18-CR-138 (JLS), 2023 WL 2806069, at *6 (W.D.N.Y. Apr. 5, 2023) ("[E]ven if [the defendant] lacks a disciplinary record, 'good behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. § 3582(c).'" (quoting *United States v. Corin*, No. S7 10 CR 391-64 (CM), 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020))); *United States v. Tillman*, No. 13 Cr. 362 (JPC), 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) (declining to grant compassionate release despite the defendant's "clean disciplinary record"). Moreover, although Leon may likely be deported to Mexico upon his release from custody, ensuring that he will not pose an imminent risk to society in the United States, the Seventh Circuit found a similar argument not to be extraordinary and compelling. *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (rejecting compassionate release of a Nigerian prisoner reasoning that "most nonviolent criminals maintain good disciplinary records" and that his removal to Nigeria "was known from the outset and played a role in setting the original sentence"). Moreover, in light of Leon's offense of conviction, involving his possession with intent to distribute a significant amount of methamphetamine (actual) while possessing 9 loaded firearms that he was prohibited from possessing as a felon, the court finds that "[s]ending [Leon] overseas will not guarantee the safety of people in this nation or any other." *Id.*

Thus, although Leon lists some commendable achievements and laudable goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release in the instant case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original

sentence—his offense, his criminal history, and the need for deterrence); *see also United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Or. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).  Similarly, the court hopes that Leon will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on either his medical condition, the length of his sentence, or his rehabilitation efforts.  *See Lewis*, 2021 WL 4519795, at *3.

  D. <u>Section 3553 Factors</u>

  Finally, the court finds that a reduction in sentence is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United*

*States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Section 3553(a)(1) requires the court to consider the nature and circumstances of the defendant's offense of conviction as well as the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Here, neither the nature of Leon's offense nor his history and characteristics warrant a sentence reduction.

Leon's offense of conviction arises out of his drug-trafficking activities in 2009 and 2010 in the Eastern District Texas. He was identified as a drug trafficker in December 2009 in the Shelby County area, and an investigation ensued. An unindicted coconspirator ("UC") stated that Leon sold ¼ ounce quantities of methamphetamine for $300 and would also supply methamphetamine to the UC and pay the UC $500 to $600 per week for drugs sold on Leon's behalf. In March 2010, law enforcement made a controlled buy of an unknown quantity of methamphetamine from Leon at his residence in Shelby County, Texas.

In July 2010, members of the Black Gangster Disciples Gang reported that Leon's codefendant, Teodocio Carrera ("Carrera"), and others were supplying cocaine to the gang for $20,0000 per kilogram, which gang members converted to crack cocaine. Investigators discovered that Leon was also receiving cocaine from an unindicted coconspirator and was selling those drugs in Center, Texas.

In August 2010, Leon was involved in sales of methamphetamine and cocaine to a cooperating source ("CS") along with Carrera. Carrera admitted supplying Leon with methamphetamine for $1,400 per ounce, which Leon, in turn, sold for $1,700 per ounce. In September 2010, a CS reported that Leon was in possession of methamphetamine at his residence

34

in Shelby County.  The CS met with a UC and provided that person with $310 in cash to purchase methamphetamine.  The UC then traveled to Leon's residence and received an unspecified amount of methamphetamine which was delivered to the CS.

On October 5, 2010, a search warrant was executed at Leon's property, where Leon and his wife were present.  A search of his vehicle, house, and trailer home uncovered 166.7 grams of a mixture or substance that contained 137.5 grams of actual methamphetamine, an unknown quantity of marijuana, and 9 loaded firearms.  The firearms included 4 rifles, 3 shotguns, a revolver, and a pistol.  Carrera subsequently admitted supplying the methamphetamine found in Leon's possession and said that he sold methamphetamine to Leon for $25,000 to $27,000 per pound.  At the time of his arrest, Leon stated that he was addicted to methamphetamine.  He said that drugs "took over" his life and that he "hopes to God" he will not recidivate.

Leon has prior convictions for driving while intoxicated, delivery of marijuana, and driving while license suspended.  The 1998 marijuana conviction entailed his delivery of up to 5 pounds of marijuana by actual transfer.  Deputies searched his property at that time and discovered a stolen SKS rifle, a stolen 7.62 millimeter rifle, and 9 rounds of ammunition.  A search of his vehicle revealed a .40 caliber handgun with a laser site behind the driver's seat.  A prior search of Leon's residence in 2002 disclosed 328.56 grams of cocaine, 13.95 grams of methamphetamine, a shotgun, a rifle, and $8,253 in cash,

Leon has a long history of poly-substance abuse, which includes the use of alcohol, marijuana, cocaine, and methamphetamine.  When interviewed in connection with the preparation of his PSR, Leon said that he used "a lot" of marijuana each day with his last use being the day before his arrest in the case at bar.  Leon also admitted snorting "a lot" of methamphetamine

several times a day with his last use being on the date of his arrest. Therefore, releasing Leon early, without the benefit of the in-house drug treatment programs now available, could facilitate his drug abuse problem, as he would gain unfettered access to a variety of illegal substances and alcohol outside the BOP.

"[C]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, but deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022) (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"); *United States v. McKinney*, No. 19-00394-03, 2023 WL 2993020, at *1, 3 (W.D. La. Apr. 18, 2023) (denying relief to a prisoner who had end-stage renal failure and had a portion of his foot amputated despite the Government's concession that the defendant had established an "extraordinary and compelling reason" within the meaning of § 3582(c)(1)(A)(i), finding that "granting compassionate release would not comport with the

36

factors enumerated in Section 3553(a)." In *McKinney*, the court concluded that a reduction in sentence would not equate to a "just punishment" under § 3553(a)(2)(A). The court expounded: "It is this court's belief that a reduced sentence simply would not reflect the seriousness of the offense, would not promote respect for the law, would not afford adequate deterrence to criminal conduct, and would not protect the public from further crimes of this Defendant." *Id.* This reasoning also applies in the current case. In view of the nature and circumstances of Leon's offense of conviction, his criminal history, the discovery of drugs and multiple firearms at his residence on several occasions, and his history of substance abuse, the court cannot conclude that Leon's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. As in *McKinney*, the § 3553(a) factors do not support Leon's motion for sentence reduction.

On balance, a sentence reduction or compassionate release is not warranted in this case in light of the applicable factors set forth in § 3553(a). As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Leon's track record is similarly a poor one. In this instance, there is no reason to believe that Leon would not revert to his prior drug-dealing and drug-abusing behavior, his possession of multiple firearms including stolen ones, and his engaging in other criminal activity if his sentence was reduced and he was released from prison at this time. *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021).

III.    <u>Conclusion</u>

In sum, Leon has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. Leon has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture. Neither his medical condition, the length of his sentence, his efforts at rehabilitation, the non-retroactive changes in the law upon which he relies, nor the § 3553(a) factors merit a reduction of his sentence under these circumstances.

Accordingly, it is ORDERED that Leon's *pro se* Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (#241) is DENIED. The Government's Motion to Seal Exhibits (#244) is GRANTED.

SIGNED at Beaumont, Texas, this 4th day of December, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE